IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

COMMUNICATION MANAGEMENT
SERVICES, LLC; DAVEL
COMMUNICATIONS; NSC
COMMUNICATIONS PUBLIC SERVICES
CORP.; CENTRAL TELEPHONE, INC.;
INTERWEST TEL, LLC; INTERWEST
TELECOM SERVICES CORP.; VALLEY
PAY PHONES, INC.; NATIONAL
PAYPHONE SERVICES, LLC; K. WEST
ENTERPRISES, LLC; T & C
MANAGEMENT, LLC; CORBAN
TECHNOLOGIES, INC.; NORTHWEST
PUBLIC COMMUNICATIONS COUNCIL;
and PACIFIC NORTHWEST
PAYPHONES, INC.,

           Plaintiffs,

v.

QWEST CORPORATION; UNIDENTIFIED
CORPORATIONS I-X; and JOHN
DOES 1-10,

           Defendants.

3:14-cv-00249-BR

OPINION AND ORDER

1 - OPINION AND ORDER

**FRANKLIN G. PATRICK**
P.O. Box 231119
Portland, OR 97281
(503) 245-2828

        Attorney for Plaintiffs

**LAWRENCE H. REICHMAN**
**MISHA A.D. ISAAK**
Perkins Coie, LLP
1120 N.W. Couch Street
10th Floor
Portland, OR 97209
(503) 727-2019

        Attorneys for Defendant Qwest

**BROWN, Judge.**

    This matter comes before the Court on Plaintiffs' Motion
(#10) for Partial Summary Judgment and Defendant Qwest
Corporation's Motion (#28) to Dismiss Plaintiff's First Amended
Complaint.  For the reasons that follow, the Court **GRANTS** Qwest's
Motion to Dismiss and **DENIES as moot** Plaintiffs' Motion for
Partial Summary Judgment.

<u>**BACKGROUND**</u>

**I.    General Background**

    Plaintiffs' Amended Complaint (#1-1) is based on a long-
running dispute between Plaintiffs and Qwest over an
administrative process that, *inter alia*, served to set payphone
tariff rates in the State of Oregon.  This matter represents the
fifth time this and related disputes have come before this Court.

2 - OPINION AND ORDER

*See Nw. Pub. Commc'ns Council (NPCC) v. Qwest Corp.*, No. 3:09-cv-01351-BR (*NPCC I*); *NPCC v. Oregon Pub. Util. Comm'n*, No. 3:10-cv-00685-BR (*NPCC II*); *NPCC ex rel State of Oregon v. Qwest Corp.*, No. 3:12-cv-00121-BR (*NPCC III*); *Commc'n Mgmt. Servs. v. Harlow*, No. 3:12-cv-01923-BR.  The Court dismissed *NPCC I*, *NPCC II*, and *NPCC III*.  *Communications Management Services v. Harlow*, No. 3:12-cv-01923-BR, is still pending before this Court.

In *NPCC I* the plaintiffs brought a variety of state-law and federal-law claims seeking relief similar to the relief sought by Plaintiffs in this matter.  The Court concluded each of the plaintiffs' federal-law claims in *NPCC I* was barred by the statute of limitations, and, based in part on the agreement of the parties, the Court declined to exercise supplemental jurisdiction over the state-law claims.  *NPCC I*, No: 3:09-cv-01351-BR, 2010 WL 4260341, at *10 (D. Or. Oct. 25, 2010).  On August 20, 2013, the Ninth Circuit affirmed this Court's decision and found the plaintiffs were on notice of their refund-based claims when they filed the Refund Case in 2001 and again when Qwest filed lower rates in 2003.  *Nw. Pub. Commc'ns Council v. Qwest Corp.*, 538 Fed. App'x 822, 823 (9th Cir. 2013).

On January 14, 2014, Plaintiffs filed an action in Multnomah County Circuit Court in which they raised the state-law claims over which this Court declined to exercise supplemental jurisdiction in *NPCC I*.  In spite of its previous assertion that

3 - OPINION AND ORDER

this Court should not exercise supplemental jurisdiction over Plaintiffs' state-law claims, Qwest removed this action to this Court asserting federal-question and diversity jurisdiction.

On February 28, 2014, Plaintiffs filed a Motion (#7) to Remand.  The Court denied Plaintiffs' Motion and found the Court properly had federal-question jurisdiction over this case and supplemental jurisdiction over Plaintiffs' state-law claims.

On March 12, 2014, before Defendant's time to answer Plaintiffs' Amended Complaint had expired, Plaintiffs filed a Motion (#10) for Partial Summary Judgment seeking summary judgment on their Claims One, Two, Four, and Nine.

On March 19, 2014, Qwest filed a Motion (#28) to Dismiss Plaintiffs' First Amended Complaint.  Qwest asserted the Court should dismiss each of Plaintiffs' claims.

## II.  Regulatory Background

Unless otherwise noted, the facts are taken from Plaintiffs' Amended Complaint and accepted as true for purposes of the Motions presently before the Court.

Plaintiffs are payphone-service providers (PSPs) who purchased public-access lines (PAL), related telephone-exchange services, "CustomNet" fraud-protection services, and exchange-access services from Qwest.  In 1995 Qwest, a regulated monopoly, was required to begin the process of setting new rates for its payphone services with the Oregon Public Utilities Commission

(PUC).  The PUC determines and sets "just and reasonable" rates for the payphone services that Plaintiffs purchase from Qwest. At the point that this process began, Qwest's previous rates were permitted to stay in place.  They were, however, designated as interim and subject to refund if the new rates were lower than the previous rates.

In 1996 while the PUC was in the process of resetting Qwest's payphone-service rates, Congress amended the Federal Communications Act (FCA) of 1934.  *See* Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (1996).  As part of these amendments Congress provided all rates must be compliant with a "new services test" (NST) beginning April 15, 1997.  The PUC is responsible for determining whether rates are NST-compliant. Accordingly, in April 1996 the PUC initiated a rate case that was bifurcated into two phases:  (1) a "revenue-requirement phase" in which the PUC would determine the revenue necessary for Qwest to generate a reasonable rate of return and (2) a "rate-design phase" in which the PUC would establish rates sufficient to permit Qwest to meet its revenue requirements.

On its own motion on April 4, 1997, the Federal Communications Commission (FCC) issued an order providing a 45-day waiver period during which Qwest and similarly-situated providers (RBOCs) were to submit all information necessary to calculate NST-compliant rates.

On April 10, 1997, Qwest and the other RBOCs submitted a "Waiver Request Letter" to the FCC seeking (1) a 45-day period to review previously-filed intrastate payphone rates and to file new rates; (2) to collect as of April 15, 2007, payments that were contingent on NST compliance; and (3) to continue collecting such payments even if the PUC did not complete its review of the previously-filed rates within the period provided by the FCC.  To assure the FCC and payphone-service providers that this requested relief would not have a discriminatory effect, Qwest and the RBOCs offered in their Waiver Request Letter to refund to any PSP the difference between the interim rates and any lower NST-compliant rate that the PUC ultimately set.  The FCC issued an order (the Waiver Order) on April 15, 1997, granting the relief requested in the Waiver Request Letter, and, based on the assurances of Qwest and the other RBOCs in the Waiver Request Letter, the PSPs did not object or appeal.

The "revenue-requirement phase" of the Rate Case terminated on May 19, 1997, when the PUC found Qwest was required to refund $102 million to the PSPs because the interim rates were higher than Qwest's revenue requirement.  That same day Qwest issued new rates for payphone services that it certified were NST-compliant. Qwest maintained these rates were NST-compliant until December 1999 when it proposed new rates as part of the "rate-design phase" of the Rate Case.  At this time Qwest asserted its 1999

PAL rates were NST-compliant and its CustomNet rates did not need to comply with NST.

On September 9, 1999, Qwest and the staff at the PUC entered into a stipulation to settle Qwest's pending appeals of the revenue-requirement phase of the Rate Case, and Qwest and the PUC staff agreed to reduce the refund rate.  The PUC staff, however, does not have the authority to bind the PUC.  By orders (collectively referred to as the Settlement Order) dated April 14, 2000, the PUC modified the stipulation, which Qwest subsequently accepted.  In the Settlement Order Qwest agreed to pay the ordered refunds before any appeal of the final rates.  In addition, Qwest agreed to pay additional refunds if the final rates were lowered as the result of an appeal.

The PUC adopted Qwest's proposed rates on September 14, 2001, over Plaintiffs' objections.  The approved PAL rates were lower than the interim rates, and the approved CustomNet rates were the same as the interim rates.  In March 2002 Plaintiffs appealed the PUC order adopting Qwest's proposed rates.

As a result of the reduction of PAL rates in the April 14, 2000, Settlement Order that were finalized in the PUC's September 14, 2001, order, Plaintiffs filed an action (the Refund Case) with the PUC in May 2001 seeking refunds of PAL rates that

Plaintiffs allegedly paid in excess of the NST-compliant rates.[1]
On March 19, 2003, and August 28, 2013, Qwest unilaterally
reduced its PAL and CustomNet rates respectively in compliance
with the New Services Order without prejudice to its position on
appeal that the previous PAL rates were NST-compliant and that
CustomNet rates did not need to be NST-compliant.[2]  *See NPCC I*,
No. 3:09-cv-01351-BR, Stipulation (#65) Regarding Procedural
History of Case, Ex. 1 at 4.

On November 10, 2004, the Oregon Court of Appeals reversed
Qwest's final rates and remanded the matter to the PUC to set PAL
and CustomNet rates compliant with the NST.  Up to this point
Qwest had insisted its rates were NST-compliant or did not need

---

[1] Although Plaintiffs do not plead the facts underlying the
Refund Case in their Amended Complaint, Plaintiffs and their
related entities have pled and asserted that Plaintiffs filed the
Refund Case in May 2001 in the previous cases before this Court.
*See NPCC I*, No. 3:09-cv-01351-BR, Am. Compl. (#4) at ¶ 107; *NPCC
II*, No. 3:10-cv-00685-BR, Compl. (#1) at ¶ 82; *Commc'n Mgmt.
Servs. v. Harlow*, No. 3:12-cv-01923, Third Am. Compl. (#31) at
¶ 13.  Accordingly, because the facts are matters of public
record and not subject to reasonable dispute, the Court takes
judicial notice of the nature and date of the Refund Case and
considers such facts in ruling on Qwest's Motion to Dismiss.  *See
Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9
(9th Cir. 2012)("[A] 'court may take judicial notice of matters
of public record without converting a motion to dismiss into a
motion for summary judgment, as long as the facts noticed are not
subject to reasonable dispute.'").

[2] The Court takes judicial notice of the procedural history
contained in the parties' Stipulation (#65) Regarding Procedural
History of Case in *NPCC I* and the attached documents.  The Court
considers only the filing of those documents with the PUC in
ruling on Defendant's Motion to Dismiss.  *See Skilstaf, Inc.*, 669
F.3d at 1016 n.9.

8 - OPINION AND ORDER

to comply with the NST standard.  After this remand, however, Qwest shared its cost data associated with its Oregon payphone services with Plaintiffs and proposed rates identical to those that it began charging in 2003.  Based in part on the stipulation of the parties, the PUC adopted Qwest's proposed rates as NST-compliant on November 15, 2007.  These NST-compliant rates were between three and twenty times less than the rates that the PUC approved on September 14, 2001.

## IV.  Plaintiffs' Additional Allegations

Plaintiffs allege Qwest knew the proposed rates that it submitted to the PUC in 1999 and that it certified were in compliance with NST were, in fact, not NST-compliant.  Plaintiffs allege Qwest knowingly submitted NST-noncompliant rates as part of a "deliberate scheme and plan" to make Plaintiffs' payphone business as unprofitable as possible in order to eliminate Plaintiffs as competitors and to enhance the value of Qwest's payphone-services business for ultimate sale to a successor. Moreover, Plaintiffs assert Qwest was able to subsidize its own payphone services in part as the result of Plaintiffs' alleged overpayment of payphone tariffs.

In addition to overcharging Plaintiffs for PAL and CustomNet services, Plaintiffs allege Qwest denied or impeded Plaintiffs' access to "comparably efficient interconnections" and other features and functionalities that were otherwise available to

payphones owned by Qwest.  Plaintiffs allege Qwest provided
several additional services for its payphones that it refused to
make available to Plaintiffs including the ability to handle the
calls of more than one payphone on a single line, to enable
simultaneous video and audio recording and the required
enhancements to provide payphone service to jails and prisons,
and to collect compensation for calls that did not require coin
payment for each payphone attached to such single or enhanced
line.  Plaintiffs further allege Qwest took action to prevent or,
in the alternative, refused to take action to allow Plaintiffs to
integrate their enhanced services with Qwest's basic services.
When terminating services to the site of a payphone, Plaintiffs
allege Qwest destroyed connections when Plaintiffs obtained the
site even though Qwest did not do so when it sold its payphones
to other entities.

In May 2004 three Qwest executives formed FSH
Communications, LLC (which is not a named defendant in this
case), to purchase Qwest's payphone-service assets.  In August
2004 Qwest sold "substantially all" of its payphone-service
assets to FSH, and today FSH is the largest PSP in Oregon.
Plaintiffs allege Qwest continues to provide preferential rates
and services to FSH that are not provided to Plaintiffs.

**V.   Plaintiffs' Claims**

In their Amended Complaint Plaintiffs state the following

fourteen claims for relief:

In Claim One Plaintiffs seek payment of all refunds now due based on specific performance of the settlement agreement between Qwest and the PUC staff, the Settlement Order, and the PUC's November 15, 2007, order.

In Claim Two Plaintiffs bring a common-law unjust enrichment claim seeking repayment of the allegedly outstanding refunds.

In Claim Three Plaintiffs seek repayment of the allegedly outstanding refunds on the grounds of promissory estoppel and judicial estoppel.

In Claim Four Plaintiffs bring a third-party beneficiary claim asserting that Plaintiffs were a third-party beneficiary to the settlement agreement between Qwest and the PUC staff and that Plaintiffs, therefore, are entitled to enforce that agreement to recover the allegedly outstanding refunds and the damages to be proven at trial.

In Claim Five Plaintiffs allege Qwest's refusal to pay the allegedly outstanding refunds gives rise to a common-law conversion claim.

In Claim Six Plaintiffs bring a claim for intentional fraud alleging Qwest made intentional material misrepresentations about the compliance of Qwest's proposed rates with the NST standard and Qwest's intention to refund any overpayment of interim rates that were ultimately found to be higher than permitted under the

NST standard.

In Claim Seven Plaintiffs raise a claim for negligent fraud based on grounds similar to those underlying Claim Six.

In Claim Eight Plaintiffs allege Qwest violated the Oregon Deceptive Trade Practices Act (ODTPA), Oregon Revised Statute § 605.608(s),(u).

In Claim Nine Plaintiffs raise a claim under Oregon Revised Statute § 759.185 in which Plaintiffs assert their payment of interim rates higher than the NST-compliant rates triggers a statutory right to mandatory refunds.

In Claim Ten Plaintiffs assert Qwest provided undue preferences and advantages in telephone-exchange services to Plaintiffs' competitors including FSH and Qwest's own payphone services in violation of Oregon Revised Statute § 759.275.

In Claim Eleven Plaintiffs allege Qwest provided FSH, Qwest's own payphone services, and Plaintiffs' other competitors access to network elements that it denied to Plaintiffs in violation of Oregon Revised Statute § 759.455.

In Claim Twelve Plaintiffs allege Qwest intentionally interfered with Plaintiffs' business relationships with its customers by discriminating against Plaintiffs in pricing and the provision of services.

In Claim Thirteen Plaintiffs raise a breach-of-contract claim alleging Qwest's representations made in the Waiver Request

Letter, Qwest's representations to Plaintiffs directly, and
Plaintiffs' agreement not to appeal based on those
representations formed a contract that Qwest breached when it
failed to pay Plaintiffs the allegedly outstanding refunds.

In Claim Fourteen Plaintiffs argue Qwest's failure to pay
the allegedly outstanding refunds gave rise to a constructive
trust as to those refunds and to the payments that Qwest received
as a result of its assurances that it would pay refunds for any
overpayment of interim rates.

## DEFENDANT'S MOTION (#28) TO DISMISS

Qwest moves to dismiss each of Plaintiffs' claims on the
grounds that they are untimely, barred by claim preclusion,
vested in the exclusive jurisdiction of the PUC, and/or fail to
state a claim on the merits.

## I.    Standards

To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to "state a claim to
relief that is plausible on its face." *Bell Atlantic v. Twombly*,
550 U.S. 544, 545 (2007).  A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged.  *Id.* at 556.  "The plausibility standard
is not akin to a 'probability requirement,' but it asks for more

than a sheer possibility that a defendant has acted unlawfully."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550
U.S. at 546).  When a complaint pleads facts that are "merely
consistent with" a defendant's liability, it "stops short of the
line between possibility and plausibility of entitlement to
relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at
557). *See also Bell Atlantic*, 550 U.S. at 555-56. The court must
accept as true the allegations in the complaint and construe them
in favor of the plaintiff. *Din v. Kerry*, 718 F.3d 856, 859 (9th
Cir. 2013).

The pleading standard under Federal Rule of Civil Procedure
8 "does not require 'detailed factual allegations,' but it
demands more than an unadorned, the-defendant-unlawfully-harmed-
me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550
U.S. at 555). *See also* Federal Rule of Civil Procedure 8(a)(2).
"A pleading that offers 'labels and conclusions' or 'a formulaic
recitation of the elements of a cause of action will not do.'"
*Id.* (citing *Twombly*, 550 U.S. at 555).  A complaint also does not
suffice if it tenders "naked assertion[s]" devoid of "further
factual enhancement." *Id.* at 557.

"In ruling on a 12(b)(6) motion, a court may generally
consider only allegations contained in the pleadings, exhibits
attached to the complaint, and matters properly subject to
judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th

Cir. 2007)(citing *Jacobson v. Schwarzenegger,* 357 F. Supp. 2d
1198, 1204 (C.D. Cal. 2004).   A court, however, "may consider a
writing referenced in a complaint but not explicitly incorporated
therein if the complaint relies on the document and its
authenticity is unquestioned."   *Id.* (quoting *Parrino v. FHP,
Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on
other grounds as stated in Abrego v. Dow Chem. Co.*, 443 F.3d 676
(9th Cir. 2006)).   As noted, when considering a motion to dismiss
the court may also consider judicially noticeable facts including
matters of public record.   *See Skilstaf, Inc.*, 669 F.3d at 1016
n.9.

   If a plaintiff fails to state a claim, "[l]eave to amend
should be granted unless the pleading 'could not possibly be
cured by the allegation of other facts.'"   *Ramirez v. Galaza*, 334
F.3d 850, 861 (9th Cir. 2003)(quoting *Lopez v. Smith*, 203 F.3d
1122, 1130 (9th Cir. 2000)).

## II.  Discussion

   As noted, Qwest moves to dismiss each of Plaintiffs' claims
on the grounds that they are untimely, barred by claim
preclusion, vested in the exclusive jurisdiction of the PUC,
and/or fail to state a claim on the merits.

### A.   Claim Preclusion - Claim One

   Qwest argues Plaintiffs' Claim One is barred by claim
preclusion because this Court previously dismissed a claim

identical to Claim One in *NPCC III*.

### 1.    Standards

"When considering the preclusive effect of a federal court judgment," the court applies the "federal law of claim preclusion." *First Pac. Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1128 (9th Cir. 2000).

Under the doctrine of claim preclusion, a final judgment on the merits rendered by a court of competent jurisdiction is conclusive and constitutes an absolute bar to a subsequent identical action against the same defendant or those in privity with that defendant. *Montana v. United States*, 440 U.S. 147, 153 (1979). *See also Trujillo v. City of Ontario*, 269 F. App'x 683, 684 (9th Cir. 2008)(same).

"Claim preclusion . . . applies where:  (1) the same parties, or their privies, were involved in the prior litigation, (2) the prior litigation involved the same claim or cause of action as the later suit, and (3) the prior litigation was terminated by a final judgment on the merits." *Central Delta Water Agency v. United States*, 306 F.3d 938, 952 (9th Cir. 2002) (citing *Blonder-Tongue Labs. v. Univ. of Ill. Found.*, 402 U.S. 313, 323-24 (1971)).

"'Privity' is a legal conclusion 'designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject

matter involved.'" *F.T.C. . Garvey,* 383 F.3d 891, 897 (9th Cir.

2004)(quoting *Schimmels v. United States,* 127 F.3d 875, 881 (9th

Cir. 1997)).  Courts have found privity when there is a

> substantial identity between party and nonparty, . . .
> the nonparty had a significant interest and
> participated in the prior action, . . . the interests
> of the nonparty and party are so closely aligned as to
> be virtually representative, and when there is an
> express or implied legal relationship by which parties
> to the first suit are accountable to nonparties [in] a
> subsequent suit with identical issues.

*Schimmels,* 127 F.3d at 881 (internal quotations and citations

omitted).  "Privity is a flexible concept dependent on the

particular relationship between the parties in each individual

set of cases." *F.T.C.,* 383 F.3d at 897 (quotation omitted).  *See*

*also Va. Sur. Co. v. Northrop Grumman Corp.,* 144 F.3d 1243, 1247

(9th Cir. 1998)("It is the identity of interest that controls in

determining privity, not the nominal identity of the parties."

(quotation and citation omitted)).

        "Claim preclusion bars any subsequent suit on claims

that were raised or could have been raised in a prior action."

*Cumbre, Inc. v. State Compensation Ins. Fund*, No. 09-17190, 2010

WL 4643044, at *1 (9th Cir. Nov. 17, 2010)(citing *Cell Thera-*

*peutics, Inc. v. Lash Group, Inc.,* 586 F.3d 1204, 1212 (9th Cir.

2009)).  "'It is immaterial whether the claims asserted

subsequent to the judgment were actually pursued in the action

that led to the judgment; rather, the relevant inquiry is whether

they could have been brought.'" *Tahoe-Sierra Pres. Council, Inc.*

17 - OPINION AND ORDER

*v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003)(quoting *United States ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905 (9th Cir. 1998)).

### 2.   Analysis

As noted, Qwest argues Claim One is barred by claim preclusion because this Court adjudicated and rejected this claim on the merits in *NPCC III*.  Although Plaintiffs do not dispute they brought the same claim in *NPCC III*, Plaintiffs dispute the third element of claim preclusion has been satisfied on the ground that the Court found Plaintiffs lacked standing, and, therefore, the Court did not decide that claim on the merits in *NPCC III*.

In Claim One Plaintiffs seek specific enforcement of the Settlement Order (PUC Orders 00-190 and 00-191) and the 2007 PUC order setting the NST-compliant rates (PUC Order 07-497).  In *NPCC III* Plaintiffs sought enforcement of the same orders pursuant to Oregon Revised Statute § 756.180.  *See NPCC III*, No. 3:12-cv-00121-BR, Compl. (#1-1) ¶¶ 45-49.  In *NPCC III* the Court concluded § 756.180 "does not appear to create a private right of action, and the Oregon Court of Appeals has held a statute providing for agency enforcement of its orders does not create such a right."  877 F. Supp. 2d 1004, 1017 (D. Or. 2012). Accordingly, this Court concluded "NPCC *has failed to state a claim*."  *Id.* at 1018 (emphasis added).  The Ninth Circuit Court

of Appeals affirmed this Court's decision and held "the district
court properly dismissed NPCC's complaint *for failure to state a
claim*." *Oregon ex rel. Nw. Pub. Commc'ns Council v. Qwest Corp.*,
563 Fed. App'x 547, 548 (9th Cir. Mar. 14, 2014)(emphasis added).

"[A] dismissal for failure to state a claim under Rule
12(b)(6) is a 'judgment on the merits' to which *res judicata*
applies." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir.
2002). Thus, the Court dismissed on the merits the same claim in
*NPCC III* as Plaintiffs' Claim One in this case.

Accordingly, on this record the Court concludes Claim
One is barred by claim preclusion.

### B. Timeliness - Claims Two through Eight (Two-Eight) and Ten through Thirteen (Ten-Thirteen)

Qwest argues Plaintiffs' Claims Two-Eight and Ten-Thirteen
are untimely. Specifically, Qwest contends Plaintiffs' state-law
Claims Four-Eight, Twelve, and Thirteen are barred by the
applicable statute of limitations and Claims Two and Three are
barred by laches.

A federal court considering state-law claims over which it
has supplemental jurisdiction must apply state substantive law in
adjudicating those claims, including statutes of limitations and
tolling doctrines. *See Albano v. Shea Homes Ltd. P'ship*, 634
F.3d 524, 530 (9th Cir. 2011). *See also Mason and Dixon
Intermodal, Inc. v. Lapmaster Int'l, LLC*, 632 F.3d 1056, 1060

(9th Cir. 2011).

### 1.    The Statutes of Limitations

At the outset the parties dispute the effective date on which these claims were filed and the periods during which the statute of limitations was tolled.  Qwest contends the proper effective filing date for the claims in this matter is November 15, 2013, the date that Plaintiffs filed their original complaint in Multnomah County Circuit Court.  Plaintiffs, however, argue the effective filing date is November 13, 2009, the date that Plaintiffs filed their Complaint in *NPCC I*, because (1) the applicable statutes of limitations were tolled during the pendency of *NPCC I* before this Court and before the Ninth Circuit on appeal and (2) Plaintiffs timely filed this action on November 15, 2013, after the Ninth Circuit issued its mandate in *NPCC I* on October 4, 2013.

Under Oregon law if a claim is dismissed without prejudice on any ground that does not adjudicate the merits, "the plaintiff may commence a new action based on the same claim or claims against a defendant in the original action" within 180 days "after the judgment dismissing the original action."  Or. Rev. Stat. § 12.220(1), (2).  If the plaintiff meets these requirements, "the new action is not subject to dismissal by reason of not having been commenced within the time allowed by statute."  *Id.*  Thus, if a new action is filed pursuant to the

requirements of § 12.220, "the statute makes the date of filing of the initial action the critical date for the later action." *Davis v. State*, 2014 WL 6693794, at *4 (Or. App. Nov. 26, 2014). The 180-day savings period in § 12.220 begins running at the time the trial court enters judgment notwithstanding any subsequent appeal.  *See Belinskey v. Clooten*, 237 Or. App. 106, 109-12 (2010).

As noted, Plaintiffs filed *NPCC I* on November 13, 2009. The Court entered Judgment (#67) in *NPCC I* dismissing Plaintiffs' state-law claims without prejudice on October 25, 2010.[3]  Thus, to obtain the benefit of the savings provision in § 12.220 Plaintiffs would have had to re-file their state-law claims no later than April 25, 2011.  Because Plaintiffs did not file this action until November 15, 2013, Plaintiffs' state-law claims are considered filed as of November 15, 2013, because Plaintiffs filed their claims after the period provided in the savings provision of § 12.220.

Plaintiffs alternatively argue the statute of limitations should be tolled pending appeal under 28 U.S.C. § 1367(d).  Section 1367(d) provides the statute of limitations for supplemental-jurisdiction claims "shall be tolled while the

---

[3] A dismissal of state-law claims for lack of supplemental jurisdiction is a dismissal without prejudice.  *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994).  *See also Wawrzynski v. Hibsham*, 490 Fed. App'x 70, 70 (9th Cir. 2013).

claim is pending and for a period of 30 days after it is
dismissed unless State law provides for a longer tolling period."
The Ninth Circuit has assumed, though not decided, this period
extends through a pending appeal.  *See Bodine v. Graco, Inc.*, 533
F.3d 1145, 1154 n.10 (9th Cir. 2008).  Plaintiffs, however, did
not appeal this Court's dismissal of Plaintiffs' state-law
claims.  *See Nw. Pub. Commc'ns Council v. Qwest Corp.*,
Appellant's Opening Br. (#18-1), No. 10-36077 (9th Cir. Aug. 31,
2011).  Thus, even if § 1367(d) operates to toll statutes of
limitations that apply to supplemental-jurisdiction claims
pending appeal, § 1367(d) would not apply in this case because
Plaintiffs did not appeal the Court's dismissal of the state-law
claims.  *See Thompson v. Paul*, 657 F. Supp. 2d 1113, 1125 (D. Az.
2009)(concluding § 1367(d) does not toll the statute of
limitations during an appeal for a plaintiff who does not appeal
the dismissal of those particular claims).  Accordingly, under
§ 1367(d), the Court concludes the relevant statutes of
limitations on Plaintiffs' state-law claims in this case were, at
best, tolled from November 13, 2009, until November 29, 2010, 30
days after this Court entered the Judgment in *NPCC I*.[4]

    The determination as to which statute provides the

_____

    [4] Although Thursday, November 25, 2010, was the 31st day
after the Court entered the Judgment in *NPCC I*, the Court notes
Monday, November 29, 2010, was the first working day after the
Thanksgiving holiday.

22 - OPINION AND ORDER

longer period for Plaintiffs to re-file their claims, however, is claim-specific in this case in light of the differences between the statutes of limitations for Plaintiffs' various claims and the difference between the savings provision in § 12.220 and the tolling provision in § 1367(d).[5]  Accordingly, the Court applies the statutory provision that is most favorable to Plaintiffs to each of Plaintiffs' claims challenged on timeliness grounds.

### 2.   Application of the Statutes of Limitations

As noted, Qwest argues Plaintiffs' Claims Four-Eight and Claims Ten-Thirteen are barred by their respective statutes of limitations.

### a.   Plaintiffs' Claim Four

In Claim Four Plaintiffs allege they are entitled to enforce the settlement agreement between Qwest and the PUC because Plaintiffs are third-party beneficiaries of that agreement.

Qwest argues, and Plaintiffs do not dispute,

---

[5] By its terms, § 1367(d) is a tolling provision; *i.e.*, "the statute simply stops the clock [for filing a claim] until the occurrence of a later event that permits the statute to resume running." *See Socop-Gonzalez v. Immigration and Naturalization Serv.*, 272 F.3d 1176, 1195 (9th Cir. 2001).  Unlike a tolling period, however, the savings provision of § 12.220 "makes the date of filing of the initial action the critical date for the later action." *Davis*, 2014 WL 6693794, at *4.  The provision that is applicable and provides the longest period in which Plaintiffs may re-file their claims is determined by the balance of the statutory period remaining for each claim at the time of the initial filing.

Plaintiffs' Claim Four is governed by a six-year statute of limitations.  *See* Or. Rev. Stat. § 12.080(1).  The six-year statute of limitations in § 12.080(1) does not incorporate a discovery rule, and, therefore, the statute imposes a limitation of "six years from the date of the breach."  *Waxman v. Waxman & Assoc., Inc.*, 224 Or. App. 499, 512 (2008).

As noted, Qwest and the PUC staff entered into the stipulation that Qwest allegedly later breached on September 9, 1999, and the PUC ratified that agreement as modified in the Settlement Order on April 14, 2000.  Plaintiffs filed the Refund Case in May 2001 seeking refunds due under the Settlement Order because of Qwest's alleged breach thereof.  Thus, Qwest's alleged breach of the settlement agreement occurred no later than May 2001.  In any event, the Court also notes it was clear that a breach had occurred by March and August 2003 when Qwest filed lower rates with the PUC and represented that those rates were NST-compliant.  Because the statute of limitations period expired before Plaintiffs filed *NPCC I*, neither § 1367(d) nor § 12.220 affect the statute-of-limitations analysis.  Thus, because Plaintiffs' third-party beneficiary claim was filed after the expiration of the six-year statute of limitations, it is time-barred.

On this record the Court concludes Plaintiffs' Claim Four is barred by the six-year statute of limitations

24 - OPINION AND ORDER

pursuant to § 12.080(1).

    **b.** **Plaintiffs' Claim Five**

   In Claim Five Plaintiffs raise a conversion claim in which they assert Qwest converted Plaintiffs' property when it refused to pay to Plaintiffs the allegedly outstanding refunds.

   An action for conversion must be filed within six years of when "the plaintiff knows or reasonably should know of the elements of such claims." *Rice v. Rabb*, 354 Or. 721, 733-34 (2014). *See also* Or. Rev. Stat. § 12.080(4). This Oregon discovery rule, however, "delays the running of the limitation periods only until the plaintiff knows or should know that *some* harm has been incurred and that *a* claim exists. The statute is not delayed until the plaintiff is or should be aware of the full extent of his or her damage or of all the details relevant to the claim." *Widing v. Schwabe, Williamson & Wyatt*, 154 Or. App. 276, 283-84 (1998)(emphasis in original).

   "Conversion 'is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the *full value* of the chattel.'" *State v. Labar*, 259 Or. App. 334, 337 (2013)(quoting *Mustola v. Toddy*, 253 Or. 658, 663 (1969)).

   As in Claim Four, Plaintiffs knew Qwest was intentionally exercising dominion or control over the allegedly

25 - OPINION AND ORDER

unpaid refunds at the time that they filed the Refund Case in May
2001.  Accordingly, the statute of limitations began to run at
the time of the filing of the Refund Case at the latest.  It is
irrelevant that Plaintiffs did not know the full extent of their
harm until November 14, 2007, when the PUC entered the order
setting the ultimate NST-compliant rates.  *See Widing*, 154 Or.
App. at 283-84 (statute of limitations begins to run when the
plaintiff knows or should know that some harm has been incurred
rather than when the plaintiff knows or should know the full
extent of the harm).  Thus, because Plaintiffs did not file their
conversion claim within six years of May 2001, their conversion
claim is barred by the statute of limitations.  In addition,
because the statutory period expired before Plaintiffs filed
*NPCC I*, neither § 1367(d) nor § 12.220 affect the statute-of-
limitations analysis.

On this record the Court concludes Plaintiffs'
Claim Five is barred by the six-year statute of limitations
pursuant to § 12.080(4).

### c.   Plaintiffs' Claim Six

In Claim Six Plaintiffs assert Qwest intentionally
made material misrepresentations in the Waiver Request Letter and
in its oral statements to the FCC and Plaintiffs.

"A fraud action must be commenced within two years
of the date on which the cause of action accrues."  *Murphy v.*

*Allstate Ins. Co.*, 251 Or. App. 316, 321 (2012). *See also* Or.
Rev. Stat. § 12.110(1). "[A] fraud claim accrues when the
plaintiff has discovered facts or, in the exercise of reasonable
diligence, should have discovered facts that would alert a
reasonable person to the existence of the three elements of an
actionable injury." *Murphy*, 251 Or. App. at 321.

To recover on a fraud claim under Oregon law a
plaintiff must prove "'the defendant made a material
misrepresentation that was false; the defendant did so knowing
that the representation was false; the defendant intended the
plaintiff to rely on the misrepresentation; the plaintiff
justifiably relied on the misrepresentation; and the plaintiff
was damaged as a result of that reliance.'" *Id.* at 324 (quoting
*Strawn v. Farmers Ins. Co.*, 350 Or. 336, 352 (2011)).

Here Qwest's alleged misrepresentations occurred
at or near the time they sent the Waiver Request Letter to the
FCC in April 1997 and the letter to long-distance carriers in May
1997. The alleged misrepresentations concerned the NST-
compliance of Qwest's rates and Qwest's alleged commitment to
refund any overpayments. For the same reasons as in Claims Four
and Five, Plaintiffs' fraud claim accrued no later than May 2001
when Plaintiffs filed the Refund Case in the PUC to recover
allegedly unpaid refunds. Because the statutory period expired
before Plaintiffs filed *NPCC I*, neither § 1367(d) nor § 12.220

27 - OPINION AND ORDER

affect the statute-of-limitations analysis.

The Court notes, however, that Claim Six would be barred by the two-year statute of limitations even if Plaintiffs were correct that their fraud claim did not accrue until January 14, 2008.  The balance of the statutory period after Plaintiffs filed *NPCC I* on November 13, 2009, was approximately 60 days. Accordingly, the 180-day savings period in § 12.220 would apply because it would provide a longer period in which Plaintiffs could have re-filed their claim than § 1367(d).  Nonetheless, because Plaintiffs failed to re-file this claim on or before April 25, 2011, Plaintiffs' Claim Six was not timely filed under the savings provision in § 12.220.

Accordingly, on this record the Court concludes Plaintiffs' Claim Six is barred by the two-year statute of limitations pursuant to § 12.110(1).

### d.    Plaintiffs' Claim Seven

In Claim Seven Plaintiffs bring a claim of "negligent fraud" arising from the representations made by Qwest in the Waiver Request Letter and in its allegedly false certifications to the PUC that all previously-filed rates that had not been replaced were NST-compliant.  The parties agree Claim Seven is based on the same representations as Claim Six.

A claim for negligent misrepresentation under Oregon law must be commenced within two years subject to the

discovery rule.  *Spirit Partners, LP v. Stoel Rives, LLP*, 212 Or. App. 295, 308 (2007).  *See also* Or. Rev. Stat. § 12.110(1). Because the facts underlying Claim Seven are the same as those underlying Claim Six and because the statute of limitations is the same for both claims, Plaintiff's Claim Seven for negligent misrepresentation is also barred by the statute of limitations.

Accordingly, on this record the Court concludes Plaintiffs' Claim Seven is barred by the two-year statute of limitations pursuant to § 12.110(1).

### e.  Plaintiffs' Claim Eight

In Claim Eight Plaintiffs allege Qwest's conduct constituted deceptive and unlawful trade practices in violation of the ODTPA.  *See* Or. Rev. Stat. § 646.608(1)(s), (1)(u).

Section 646.608(1)(s) provides:  A person engages in unlawful business practices if that person "[m]akes false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services." Section § 646.608(1)(u) provides:  A person engages in unlawful business practices if that person "[e]ngages in any other unfair or deceptive conduct in trade or commerce."  The ODTPA has a one-year statute of limitations subject to a discovery rule.  Or. Rev. Stat. § 646.638(6).

Plaintiffs failed to bring this claim within one year of the accrual of their alleged ODTPA claims.  Even if this

29 - OPINION AND ORDER

claim had accrued on the day that Plaintiffs commenced *NPCC I*,[6] the statute of limitations would have expired no later than November 30, 2011, under the tolling provision of § 1367(d).

Accordingly, on this record the Court concludes Plaintiffs' Claim Eight is barred by the one-year statute of limitations pursuant to § 646.638(6).

### f.   Claim Ten

In Claim Ten Plaintiffs assert Qwest provided undue preferences and advantages in favor of Plaintiffs' competitors, including FSH and Qwest's own payphone services, in violation of Oregon Revised Statute § 759.275.

Section 759.275 provides:  "No telecommunications utility shall make or give undue or unreasonable preference or advantage to any particular person or locality, or shall subject any particular person or locality to any undue or unreasonable prejudice or disadvantage in any respect," and any telecommunications utility that does so "is guilty of unjust discrimination."  The parties agree a claim under § 759.275 must be commenced within six years of accrual.  *See* Or. Rev. Stat. § 12.080(2).

All of the specific conduct by Qwest that Plaintiff alleges constituted a violation of § 759.275 took place

---

[6] The Court notes Plaintiffs' ODTPA claim likely accrued long before November 13, 2009.

no later than 2004.  Plaintiffs do not argue their undue-preferences claim accrued after 2004 and do not plead any facts from which the Court could find Plaintiffs reasonably discovered this claim after 2004.  Thus, even viewing the Amended Complaint in the light most favorable to Plaintiffs, the Court finds Claim Ten accrued on December 31, 2004, for purposes of this Motion.

Plaintiffs had approximately 14 months remaining on the statutory period when they filed *NPCC I*.  Under the tolling provision of § 1367(d), however, that period would have expired no later than January 2012.  Thus, the six-year statute of limitations in § 12.080(2) expired no later than January 2012, which was approximately sixteen months before Plaintiffs filed this action.

Accordingly, on this record the Court concludes Plaintiffs' Claim Ten is barred by the six-year statute of limitations pursuant to § 12.080(2).

### g.  Plaintiffs' Claim Eleven

In Claim Eleven Plaintiffs allege Qwest violated Oregon Revised Statute § 759.455 by providing Plaintiffs' competitors, including FSH, access to network elements that Qwest denied to Plaintiffs.

The parties agree Claim Eleven stems from the same set of facts as Claim Ten and that § 759.455 carries with it the same six-year statute of limitations as Claim Ten.  *See* Or. Rev.

Stat. § 12.080(2).   Like Claim Ten, therefore, the statute of limitations for Claim Eleven expired no later than January 2012.

Accordingly, on this record the Court concludes Plaintiffs' Claim Eleven is barred by the six-year statute of limitations pursuant to § 12.080(2).

### h.  Plaintiffs' Claim Twelve

In Claim Twelve Plaintiffs allege Qwest's price and service discrimination unlawfully interfered with Plaintiffs' contractual and business relations.

A claim for tortious interference with contractual relations must be commenced within two years of the accrual of the claim.  *See Cramer v. Stonebridge Inn, Inc.*, 77 Or. App. 407, 410-11 (1986).  *See also* Or. Rev. Stat. § 12.110(1); *Butcher v. McClain*, 244 Or. App. 316, 321 (2011).  A claim for tortious interference with contractual relations accrues when the interference "in fact causes injury." *Butcher*, 244 Or. App. at 324 (discussing *Cramer*, 77 Or. App. at 411).

Qwest asserts Plaintiffs' claim for tortious interference with contractual relations accrued no later than 2004, the latest date at which Plaintiffs allege in their Complaint that Qwest began its service discrimination. Plaintiffs, on the other hand, contend this claim accrued when the PUC entered its order finalizing the NST-compliant rates on November 15, 2007.

32 - OPINION AND ORDER

Even if Plaintiffs are correct that Claim Twelve accrued on November 15, 2007, Plaintiffs filed *NPCC I* within days of the expiration of the statutory period in § 12.110(1). Thus, the savings provision of § 12.220 is the most favorable to Plaintiffs. Nonetheless, the Court need not resolve the parties' dispute about the date of accrual of Claim Twelve because even if Plaintiffs' tortious interference with contractual relations claim accrued on November 15, 2007, Plaintiffs re-filed this claim after the savings period in § 12.220.

Accordingly, on this record the Court concludes Plaintiffs' Claim Twelve is barred by the two-year statute of limitations. *See* Or. Rev. Stat. § 12.110(1).

### i.    Plaintiffs' Claim Thirteen

In Claim Thirteen Plaintiffs raise a breach-of-contract claim arising from Qwest's representations in the Waiver Request Letter and made orally to Plaintiffs.

As noted, Oregon's six-year statute of limitations in contract claims begins to run on the date of the breach. *See Waxman*, 224 Or. App. at 511. *See also* Or. Rev. Stat. § 12.080. Any breach of the alleged contract between Qwest and Plaintiffs occurred no later than May 2001 when Plaintiffs filed the Refund Case to recover from Qwest the unpaid refunds that they were allegedly entitled to under, among other documents, the Waiver Request Letter. Because the statutory period expired before

Plaintiffs filed *NPCC I*, however, neither § 1367(d) nor § 12.220
affect the statute-of-limitations analysis.

Accordingly, on this record the Court concludes
Plaintiffs' Claim Thirteen is barred by the six-year statute of
limitations. *See* Or. Rev. Stat. § 12.080.

### 3. Laches

As noted, Qwest asserts Plaintiffs' Claims Two and
Three are barred by laches.

Laches bars a party from asserting an equitable claim
when the party (1) had actual or "inquiry notice" of a claim,
(2) unreasonably delayed bringing that claim, and (3) the delay
substantially prejudiced the defendant "to the extent that it
would be inequitable to afford the relief sought." *Hilterbrand
v. Carter*, 175 Or. App. 335, 342 (2001). "The analogous statute
of limitations . . . provide[s] guidance in determining whether
an unreasonable period of time has passed." *Id.* at 343.
Although the party asserting laches generally bears the burden to
prove the necessary elements, "when an action is commenced after
the expiration of the analogous statute of limitations, the
plaintiff has the burden of proving the absence of laches." *Id.*
Nonetheless, "[l]aches depends on the circumstances of each case
and will not be 'applied mechanically to every situation' merely
because a party has acted with neglect.'" *Id.* (quoting *McIver v.
Norman*, 187 Or. 516, 544 (1949)).

a.    **Plaintiffs' Claim Two**

In Claim Two Plaintiffs assert Qwest was unjustly enriched when it failed to file NST-compliant rates in a timely fashion and did not pay the allegedly outstanding refunds to Plaintiffs.

The analogous statute of limitations for an unjust-enrichment claim is six years. *Jaqua v. Nike, Inc.*, 125 Or. App. 294, 299 (1993). *See also* Or. Rev. Stat. § 12.080(1). Because Plaintiffs' unjust-enrichment claim is based on the allegedly unpaid refunds, the Court finds this claim accrued in May 2001 and again in March and August 2003. For the same reasons as in Claim Four, the Court finds Claim Two was filed outside of the analogous statute of limitations and Plaintiffs, therefore, bear the burden to prove the absence of laches. *See Hilterbrand*, 175 Or. App. at 342.

Here the first two elements of laches are present because, as noted, Plaintiffs had actual notice of this claim in May 2001 and the resulting delay in pursuing their unjust-enrichment claim was unreasonable. Plaintiffs, however, have not satisfied their burden to show Qwest has not been prejudiced by Plaintiffs' unreasonable delay. Moreover, the Court finds Qwest, in fact, has been prejudiced by having to litigate minor variations of the same issues repeatedly and in various fora for well over a decade. Thus, equity does not weigh in Plaintiffs'

favor.

Accordingly, on this record the Court concludes
Plaintiffs' Claim Two is barred by laches.

### b.   Plaintiffs' Claim Three

In Claim Three Plaintiffs assert promissory
estoppel and judicial estoppel apply based on Qwest's unfulfilled
promises to pay refunds that they have allegedly refused to pay
to Plaintiffs.

The Court construes Claim Three as a promissory-
estoppel claim because judicial estoppel is not a cognizable
cause of action.  As Qwest correctly points out, judicial
estoppel is not a cause of action, but rather a doctrine designed
to "protect the integrity of the judicial process by prohibiting
parties from deliberately changing positions according to the
exigencies of the moment."  *See New Hampshire v. Maine*, 532 U.S.
742 (2001)(internal citations and quotations omitted).
Plaintiffs, therefore, cannot raise a claim for judicial
estoppel.  Thus, the Court construes Plaintiffs' Claim Three as a
promissory estoppel claim.

The analogous statute of limitations for a
promissory-estoppel claim is six years.  *See* Or. Rev. Stat.
§ 12.080(1).  Plaintiffs' claim is based on the unpaid refunds
that Qwest allegedly owes to Plaintiffs.  Accordingly,

36 - OPINION AND ORDER

Plaintiffs' promissory-estoppel claim accrued no later than May
2001 and again in March and August 2003. For the same reasons as
in Claim Four, the Court finds Claim Three was filed outside of
the analogous statute of limitations and Plaintiffs, therefore,
bear the burden of proving the absence of laches. *See
Hilterbrand*, 175 Or. App. at 342.

For the same reasons as in Claim Two, the Court
finds the elements of laches are present as to Claim Three.
Accordingly, on this record the Court concludes Plaintiffs' Claim
Three is barred by laches.

In summary, the Court concludes Plaintiffs' Claims Two and
Three are barred by laches and Claims Four-Eight and Ten-Thirteen
are barred by the relevant statute of limitations.

## C.    Failure to State a Claim

As noted, Qwest moves to dismiss Plaintiffs' Claims Nine and
Fourteen on the ground that those claims do not raise viable
causes of action on which the Court may grant relief.

### 1.    Claim Nine

In Claim Nine Plaintiffs seek to recover the allegedly
unpaid refunds from Qwest pursuant to Oregon Revised Statute
§ 759.185(4).

Section 759.185(4) provides:

> If the commission is required to or determines to
> conduct a hearing on a rate or schedule of rates
> filed pursuant to ORS 759.180, but does not order
> a suspension thereof, any increased revenue

> collected by the telecommunications utility as a
> result of such rate or rate schedule becoming
> effective shall be received subject to being
> refunded.  If the rate or rate schedule thereafter
> approved by the commission is for a lesser
> increase or for no increase, the
> telecommunications utility shall refund the amount
> of revenues received that exceeds the amount
> approved as nearly as possible to the customers
> from whom such excess revenues were collected, by
> a credit against future bills or otherwise, in
> such manner as the commission orders.

Qwest contends § 759.185(4) is inapplicable because it only

applies when a telecommunications utility files increased rates

with the PUC and the PUC does not suspend those rates pending a

hearing.  Plaintiffs, in turn, argue § 759.185(4) applies here

because at the time that the PUC initiated the Rate Case, PUC

orders provided the previously-filed tariffs would remain in

place on an interim basis during the pendency of the Rate Case

and those tariffs were subject to a right of refund.

Plaintiffs, however, interpret § 759.185(4) too

broadly.  In *Pacific Northwest Bell Telephone Co. v. Eachus* the

Citizens' Utility Board noted:  "[W]hen a telecommunications

utility seeks a rate change or increase, PUC has the authority

and traditionally grants the utility an interim rate increase

subject to refund, pending hearing on the reasonableness of the

rate."   135 Or. App. 41, 47-48 (1995).  The Oregon Court of

Appeals made clear, however, that § 759.185 "applies only in the

context of *new* or *increased* rates sought by the utility pursuant

to ORS 759.180."  *Id.* at 48 (emphasis in original).

38 - OPINION AND ORDER

Here the PUC did not permit an interim rate increase during the pendency of the Rate Case nor did the Rate Case involve requests by Qwest for new or increased rates. In fact, the PUC initiated the Rate Case and ordered that the previous rates remain in place on an interim basis subject to a right of refund. Accordingly, the Court concludes § 759.185(4) is inapplicable to this case and does not provide Plaintiffs with a cause of action. *See Pac. Nw. Bell Tel. Co.*, 135 Or. App. at 48.

On this record, therefore, the Court concludes Plaintiffs fail to state a claim in Claim Nine.

### 2. Plaintiffs' Claim Fourteen

In Claim Fourteen Plaintiffs assert Qwest's nonpayment of the refunds allegedly due to Plaintiffs created a constructive trust.

A "'constructive trust' does not stand on its own as a claim but exists solely as an equitable remedy." *Butcher v. McClain*, 244 Or. App. 316, 326 (2011). *See also Evergreen W. Bus. Ctr., LLC v. Emmert*, 354 Or. 790, 797 (2014). "[W]hen no specific identifiable property is at issue and only a money judgment is requested, only the legal remedy is available." *Evergreen W. Bus. Ctr.*, 354 Or. at 797. Because Plaintiffs raise "constructive trust" as a stand-alone claim and because Plaintiffs only seek a money judgment to recover the allegedly unpaid refunds from Qwest, Plaintiffs' claim for "constructive

39 - OPINION AND ORDER

trust" is not cognizable.

On this record the Court concludes Plaintiffs fail to state a claim in Claim Fourteen.

## III. Amendment of Claims

A claim may only be dismissed with prejudice if it is "'clear' that 'the complaint could not be saved by any amendment.'" *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009)(quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir. 2001)).

The Court finds amendment could not save Plaintiffs' Claim One because the Court dismisses that claim on claim-preclusion grounds.  Similarly, because the Court dismisses Plaintiffs' Claims Nine and Fourteen as a matter of law, amendment to Plaintiffs' Complaint could not save those claims.  Finally, the Court concludes the claims dismissed on timeliness grounds could not be revived if Plaintiffs were given an opportunity to amend their Complaint because the facts that determine the timeliness dismissals have been thoroughly developed through the lengthy regulatory and procedural history of this case and the related actions and are not subject to change.

Accordingly, on this record the Court concludes Plaintiffs' Amended Complaint (#1-1) must be dismissed in its entirety with prejudice, and the Court declines to grant Plaintiffs leave to amend their Complaint.

## PLAINTIFFS' MOTION (#10) FOR
## PARTIAL SUMMARY JUDGMENT

Because the Court has granted Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint in its entirety, the Court denies as moot Plaintiffs' Motion for Partial Summary Judgment.

## CONCLUSION

For these reasons, the Court **GRANTS** Qwest's Motion (#28) to Dismiss First Amended Complaint and **DISMISSES** this matter **with prejudice.** The Court also **DENIES as moot** Plaintiffs' Motion (#10) for Partial Summary Judgment.

IT IS SO ORDERED.

DATED this 15ᵗʰ day of December, 2014.

ANNA J. BROWN
United States District Judge

41 - OPINION AND ORDER